UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| REGULATOR MARINE, INC., <br> *Plaintiff,* <br><br> v. <br><br> FLORIDA BOW THRUSTERS, INC. <br> *Defendant.* | Case No. |

## PLAINTIFF, REGULATOR MARINE, INC.'S COMPLAINT

The Plaintiff, Regulator Marine, Inc., by and through undersigned counsel, files this Complaint against the Defendant, Florida Bow Thrusters, Inc. and states:

### THE PARTIES

1. Plaintiff, Regulator Marine, Inc., ("Regulator") is a North Carolina corporation with a principal place of business at 187 Peanut Drive, Edenton, North Carolina.

2. Defendant, Florida Bow Thrusters, Inc. ("Florida Bow Thrusters") is a corporation organized under the laws of the State of Florida with a principal office at 135 Imperial Street, Merritt Island, Florida.

### JURISDICTION AND VENUE

3. This is a case of maritime jurisdiction pursuant to 28 U.S.C. § 1333(1).

4. Venue is proper in this judicial district based upon contractual terms between the Parties.

### BACKGROUND AND FACTUAL ALLEGATIONS

5. On or about January 25, 2015 Ace American Insurance Company ("ACE") as Subrogee of Eric Slifka ("Slifka") filed its initial Complaint against Defendant Oyster Harbors Marine, Inc. ("Oyster Harbors") in the United States District Court for the District of

Massachusetts for breach of implied warranty of fitness for a particular purpose and implied warranty of merchantability under the Massachusetts General Laws for maritime property damages that occurred on or about July 11, 2014, while Mr. Eric Slifka was aboard his vessel, E=Mc2 (the "Vessel").

6. On or about March 11, 2015 ACE filed its First Amended Complaint.

7. On or about March 25, 2015, Oyster Harbors filed its Answer to Plaintiff, ACE's Amended Complaint along with a Third-Party Complaint against Regulator alleging Regulator may be liable to Oyster Harbors for all or part of the claims asserted in ACE's Amended Complaint against Oyster Harbors.

8. In its Amended Complaint, ACE alleges that on or about July 11, 2014, the Plaintiff's insured's Vessel caught fire and burned severely.

9. The Amended Complaint also alleges that Oyster Harbors sold the Vessel at issue to the Plaintiff's insured, and asserts breach of warranty, negligence, and strict liability claims against Oyster Harbors.

10. The Third-Party Complaint alleges Regulator manufactured and/or assembled the Vessel at issue, and then sold the Vessel to Oyster Harbors and asserts breach of warranty, common law indemnification and contribution claims against Regulator.

11. On or about May 26, 2015 Regulator timely answered the Third-Party Complaint.

12. Following the taking of sworn testimony of eyewitnesses to the Vessel fire, on or about July 15, 2016 a second joint inspection of the Vessel was conducted in Quincy, Massachusetts.

13. During the second joint inspection it was determined, at least by an expert retained by ACE, that a likely cause of the fire was a Vetus Maxwell, Inc. ("Vetus") brand bow thruster that had been installed by Florida Bow Thrusters.

14. Based upon the evidence inspection conducted on July 15, 2016, all parties agreed to suspend the evidence inspection and place Florida Bow Thrusters and Vetus on notice of a potential claim and invite them to participate in an examination of the Vessel and evidence.

15. On or about July 28, 2016 counsel for ACE forwarded Notice Letters to Florida Bow Thrusters and Vetus.

16. On or about August 30, 2016 all parties, including representatives of Florida Bow Thrusters and Vetus attended a joint inspection of the Vessel and evidence in Quincy, Massachusetts pursuant to the agreed upon "Examination Protocol" provided by counsel for ACE.

17. On or about August 30, 2016 the bow thruster and associated wiring and components were removed from the Vessel, documented and packaged for laboratory testing by all parties, including Florida Bow Thrusters and Vetus.

18. On or about November 8, 2016 joint laboratory testing was conducted by all parties, including Florida Bow Thrusters and Vetus, on the removed bow thruster and components pursuant to the agreed upon "Examination Protocol" provided by counsel for ACE.

19. On or about November 18, 2016 ACE's Electrical Engineer Michael Wald ("Wald") issued a report pursuant to FRCP 26 in which he opines *inter alia*:

> *"Examination of the fire patterns on the boat confirmed that this fire developed in the bow thruster compartment, located below the V-birth cushions and spread up and out through the helm. A very distinctive hole, the exact shape of the bow thruster compartment, was burned through the V-berth cushions.*
>
> *Disassembly of the bow thruster revealed clear evidence of extreme overheating having occurred at the brush assemblies within the rear motor casing. All four brush holders were severely distorted and the entire end of the motor had clearly been subjected to extreme heat. This damage pattern is consistent with the motor being stressed beyond it design limits resulting in damaging levels of current passing through the brushes causing extreme heat and ultimately igniting this fire.*
>
> *There were several abnormal conditions noted in the bow thruster system. In particular, it was noted that the internal overcurrent protective device for the*

3

*motor was not connected. In addition, two of the nut and bolt combinations intended to hold the two halves of the motor enclosure together were not installed. Furthermore, there were no remains of gasket material found on the joining surfaces of the enclosure, as would have been originally installed. Instead the remains of silicon caulk were present."*

20. On or about June 30, 2011 Regulator entered into a contract with Florida Bow Thrusters to sell and install: one Vetus Bow 55 121 lbf./12 volt bow thruster (that had been designed, manufactured and sold by Vetus to Florida Bow Thrusters); one six inch fiberglass thruster tube; one Vetus control panel (joystick) at helm station (that had been designed, manufactured and sold by Vetus to Florida Bow Thrusters); one battery disconnect with switch at helm (that had been designed, manufactured and sold by Vetus to Florida Bow Thrusters); and to provide all necessary labor and hardware to complete job (collectively "bow thruster" or "bow thruster package").

21. Pursuant to the contractual agreement between Florida Bow Thrusters and Regulator, the Vetus bow thruster and related components were sold to Regulator and installed at Regulator's Edenton, North Carolina manufacturing facility.

22. Regulator compensated Florida Bow Thrusters $6,000.00 for the Vetus thruster and related components sold to Regulator and installed at Regulator's Edenton, North Carolina manufacturing facility.

23. The Vessel was purchased by Eric Slifka ("Slifka") a Massachusetts resident through Regulator Dealer, Oyster Harbors, a Massachusetts company with a principal place of business in Osterville, Massachusetts.

24. The Vetus bow thruster and related components were a Vessel option customer Oyster Harbors requested be installed

25. On or about January 5, 2017, Regulator filed (with leave of Court) a Fourth-Party Complaint against Florida Bow Thrusters and Vetus seeking *inter alia* contribution and indemnification.

26. On or about April 14, 2017, Vetus filed an Answer to Regulator's Fourth-Party Complaint counter-claiming Regulator for contribution and indemnification to which Regulator timely answered.

27. On or about May 19, 2017 Florida Bow Thruster filed motions to dismiss Regulator's claims stating the United States District Court for the District of Massachusetts lacked jurisdiction over the claims based upon the forum selection clause included in Invoice No. 18369 (the "Invoice") between Regulator and Florida Bow Thrusters - stating in part that "Venue of any "in personam" action related to this work shall lie exclusively with the Courts in and for Brevard County, FL, including the applicable U.S. District Court."

28. On or about June 9, 2017 Regulator withdrew its Fourth-Party Complaint without prejudice acknowledging jurisdiction under the forum selection clause contained within the Invoice.

## COUNT I - NEGLIGENCE

29. Regulator incorporates by reference the preceding paragraphs as though the same were set forth at length herein.

30. Florida Bow Thrusters owed a duty to Regulator to exercise reasonable care in the sale and installation of the bow thruster package.

31. The aforesaid fire and resulting damages were caused proximately by the negligence and carelessness of Florida Bow Thrusters, including but not limited to the following:

    a) Failing to properly inspect, test, and install the bow thruster so as to cause the electrical and related systems to malfunction and ignite the fire;

    b) Selling or distributing a defective bow thruster;

    c) Improperly inspecting, testing, repairing, maintaining, and otherwise working on the bow thruster so as to cause the fire; and,

    d) Otherwise acting without reasonable care in ways that may be disclosed during the discovery process.

32. Should Oyster Harbors and/or Vetus prevail on their claims against Regulator, Regulator will be damaged and entitled to judgment against Florida Bow Thrusters for Negligence.

### COUNT II - COMMON LAW INDEMNIFICATION

33. Regulator incorporates by reference the preceding paragraphs as though the same were set forth at length herein.

34. Should Oyster Harbors or Vetus prevail on their claims, Florida Bow Thruster shall be liable to hold Regulator harmless of and from all damages, expenses, judgments, losses, and liabilities, including attorneys' fees awarded Oyster Harbors and/or Vetus.

35. In the event Oyster Harbors and/or Vetus should recover any judgment against Regulator on the claims asserted, then Regulator will be entitled to judgment against Florida Bow Thrusters in full indemnification.

### COUNT III - CONTRIBUTION

36. Regulator incorporates by reference the preceding paragraphs as though the same were set forth at length herein.

37. In the event Oyster Harbors and/or Vetus sustained damages as alleged, then such damages were the direct and proximate result of the carelessness and negligence of Defendant, Florida Bow Thrusters.

38. Should Oyster Harbors and/or Vetus receive any judgment against Regulator for damages and costs arising from alleged negligence, which negligence Regulator denies, Florida Bow Thrusters would be jointly liable, and Regulator would be entitled to judgment against Florida Bow Thrusters for contribution toward any damages and costs awarded.

**WHEREFORE**, Regulator respectfully requests that this Court:

A.   Enter judgment against Florida Bow Thrusters for damages and costs that may be adjudged against Regulator;

    B.    Award Regulator reasonable expenses of suit, including attorneys' fees arising out of or incurred in the defense of any claim brought by ACE, Oyster Harbors and/or Vetus; and

    C.    Award such other relief as this Court deems just and proper.

REGULATOR DEMANDS A TRIAL BY JURY

Dated: June 9, 2017

Respectfully submitted,

PLAINTIFF
REGULATOR MARINE, INC.
By its counsel,

*/s/ Robert B. Birthisel*

**ROBERT B. BIRTHISEL,** FBN: 906654
**JULES V. MASSEE,** FBN: 41554
jmassee@hamiltonmillerlaw.com
**STACEY L. PAPP,** FBN: 41817
spapp@hamiltonmillerlaw.com
**ELLEN S. MELVIN**
Florida Bar No.: 106670
emelvin@hamiltonmillerlaw.com
Hamilton, Miller & Birthisel, LLP
100 S. Ashley Drive, Suite 1210
Tampa, Florida 33602
**E-SERVICE**: CBBserve@hamiltonmillerlaw.com
Tel: 813-223-1900 / Fax: 813-223-1933
*Attorneys for Plaintiff*


Of Counsel: *Pro Hac Vice to be filed*

*/s/ Patrick O. McAleer*
Patrick O. McAleer
FARRELL MCALEER &SMITH LLP
60 Washington Street
Suite 303
Salem, MA 01970
(978) 744-8919
pmcaleer@fmsfirm.com